IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN M. DIXON, | ) | CASE NO. 5:14 CV 1643 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.  Nature of the case and proceedings**

Before me[1] is an action by Robin M. Dixon under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 17. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Dixon, who was 47 years old on the date of the ALJ's decision,[10] has a high school education,[11] lived at the time of the hearing with her 17 year-old son,[12] and had prior relevant work experience as an assembler/machine operator and a bottling line attendant.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Dixon had the following severe impairments: major depression; panic disorder; anxiety disorder; fibromyalgia; adjustment disorder with mixed anxiety and depression.[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Dixon's residual functional capacity ("RFC"):

---

[6] ECF # 13.

[7] ECF # 14 (Dixon's brief); ECF # 18 (Commissioner's brief); ECF # 19 (Dixon's reply brief).

[8] ECF # 14-2 (Dixon's charts); ECF # 18-1 (Commissioner's charts).

[9] ECF # 14-1 (Dixon's fact sheet).

[10] Transcript ("Tr.") at 21, 23.

[11] *Id.* at 21.

[12] *Id.* at 60.

[13] *Id.* at 21.

[14] *Id.* at 12.

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. She can frequently stoop, kneel, crouch and crawl. She should avoid exposure to hazards such as unprotected heights, dangerous machinery and commercial driving. She can perform simple, routine repetitive tasks in a static environment that would experience infrequent changes, with no strict time or fast pace production quotas. She can have incidental to no contact or interaction with the general public and only occasional superficial contact with coworkers and supervisors, superficial meaning she can work in the same general area, but not engage in any type of conflict resolution, arbitration, negotiation, direction, management or group task.[15]

The ALJ decided that this RFC precluded Dixon from performing her past relevant work.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Dixon could perform.[17] The ALJ, therefore, found Dixon not under a disability.[18]

**C.     Issues on judicial review and decision**

Dixon asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Dixon presents the following issues for judicial review:

---

[15] *Id.* at 14-15.

[16] *Id.* at 21.

[17] *Id.* at 22.

[18] *Id.*

- The ALJ did not give controlling weight to Dixon's treating psychiatrist but instead substituted his own judgment. Did the ALJ err in not giving controlling weight to Dixon's treating psychiatrist?[19]

- The ALJ found that Dixon was able to perform work that existed in the national economy despite the testimony of the VE in response to the ALJ's questions about attendance and the ability to be off task. Did the Commissioner meet her burden at step five of the sequential evaluation process?

For the reasons that follow, I will conclude that the ALJ did not adhere to the treating physician rule/good reasons requirement and, therefore, the decision here must be reversed, with the matter remanded for further proceedings.

## Analysis

**A.     Standard of review – Treating physician rule and good reasons requirement**

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[20]

---

[19] ECF # 14 at 13.

[20] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[21]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[22] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[23]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[24] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[25] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[26] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[27]

---

[21] *Id.*

[22] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[23] *Id.*

[24] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[25] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[26] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[27] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[28] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[29] The court noted that the regulation expressly contains a "good reasons" requirement.[30] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[31]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[32] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[33] The former confers a substantial, procedural right on

---

[28] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[29] *Id.* at 544.

[30] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[31] *Id.* at 546.

[32] *Id.*

[33] *Id.*

the party invoking it that cannot be set aside for harmless error.[34] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[35]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[36] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[37] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[38] *Blakley v. Commissioner of Social Security*,[39] and *Hensley v. Astrue*.[40]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[41] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[34] *Id.*

[35] *Id.*

[36] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[37] *Id.* at 375-76.

[38] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[39] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[40] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[41] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[42] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[43] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[44]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[45] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[46] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[47] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[42] *Id.*

[43] *Id.*

[44] *Rogers*, 486 F.3d at 242.

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

and the treatment reports.[48] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[49]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[50]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[51] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[52] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[53] or that objective medical evidence does not support that opinion.[54]

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Rogers*, 486 F.3d 234 at 242.

[52] *Blakley*, 581 F.3d at 406-07.

[53] *Hensley*, 573 F.3d at 266-67.

[54] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[55] The Commissioner's *post hoc* arguments on judicial review are immaterial.[56]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[57]

- the rejection or discounting of the weight of a treating source without assigning weight,[58]

---

[55] *Blakley*, 581 F.3d at 407.

[56] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[57] *Blakley*, 581 F.3d at 407-08.

[58] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[59]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[60]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[61] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[62]

The Sixth Circuit in *Blakley*[63] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[64] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[65]

---

[59] *Id.*

[60] *Id.* at 409.

[61] *Hensley*, 573 F.3d at 266-67.

[62] *Friend*, 375 F. App'x at 551-52.

[63] *Blakley*, 581 F.3d 399.

[64] *Id.* at 409-10.

[65] *Id.* at 410.

In *Cole v. Astrue*,[66] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[67]

**B.     Application of standard**

As alluded to above, the critical issue here is the ALJ's treatment of the opinion of Dixon's treating psychiatrist, Keith Reitz, M.D., as well as related issues concerning the ALJ's handling of opinions from a consulting, examining psychologist and Dixon's social worker.

Of primary significance is how the ALJ dealt with the opinion of Dr. Reitz.

Initially, the ALJ did not begin by explicitly noting in the opinion that Dr. Reitz was a treating physician, whose opinion was thus entitled to controlling weight unless, after a prescribed analysis, it was established that it did not merit that weight. Instead, as is too often the case, the ALJ simply assigned "little weight" to Dr. Reitz's opinion because it "was not consistent with the treatment record."[68]

---

[66] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[67] *Id.* at 940.

[68] Tr. at 20.

As the ALJ acknowledges,[69] Dr. Reitz gave an opinion on December 31, 2012, that Dixon would have noticeable difficulty completing a normal workday and workweek without an unreasonable number and length of rest periods due to psychological based symptoms,[70] would have noticeable difficulty interacting appropriately with the general public,[71] and would also have noticeable difficulty maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness.[72] But, the ALJ concluded, this assessment in December, 2012, appears to rely mostly on treatment notes from an examination in October, 2012, where Dixon reported that she was having trouble sleeping and had not been taking her medication.[73] According to the ALJ, the limitations of the December opinion are inconsistent with the treatment notes from December, which show that after Dixon resumed her medication she was sleeping better, was less irritable in her demeanor, and displayed appropriate behavior with intact cognition, all while manifesting good insight and judgment.[74]

The ALJ implies here that Dr. Reitz's opinion is significantly weakened because it is based on outdated evidence of Dixon's condition in October, which evidence was then

---

[69] *Id.* at 19.

[70] *Id.* at 540.

[71] *Id.* at 541.

[72] *Id.*

[73] *Id.* at 20.

[74] *Id.*

superceded by an improved condition in December. But this reasoning is itself weak in several important, decisive respects.

First, as Dixon points out,[75] the ALJ's reasoning ignores significant elements of the record subsequent to October, 2012, which fully support Dr. Reitz's opinion, and in so doing the ALJ ventures uncomfortably close to cherry-picking the evidence to support his denial of controlling weight to Dr. Reitz's opinion. A clinical progress note from just one week prior to Dr. Reitz's opinion shows that Dixon reported being anxious and experiencing panic attacks when she leaves her home, along with continued difficulty sleeping that affects her ability to work.[76] Moreover, clinical notes recorded in the week just after Dr. Reitz's opinion indicate Dixon had been experiencing increased anxiety along with decreased sleep, together with "racing thoughts about death, dying."[77]

None of these notes, which are consistent with Dr. Reitz's opinion and were recorded within weeks of that opinion, were even mentioned by the ALJ who advanced a contrary implication that the record showed that Dixon's difficulties from October were largely over in December. Not only does this conduct violate the principle that an ALJ must consider the entire record and not selectively "pick and choose" only those elements of the record that

---

[75] ECF # 19 at 3-4.

[76] Tr. at 524.

[77] *Id.* at 518.

-14-

supports his position,[78] it does not provide "good reasons" for finding that Dr. Reitz's opinion was not supported by the record and so not entitled to controlling weight.

Further, even if viewed without considering any other portions of the record, the examples selected by the ALJ do not in themselves provide "good reasons" for concluding that Dr. Reitz's opinion is unsupported by the clinical evidence. In particular, even if the comments that Dixon was "less irritable," that her mood had "improved," and that her behavior was "appropriate" and her cognition was "intact" were all true, none of those things in any way contradict or rebut the consistent findings that she was experiencing panic attacks, which affected her ability to work.

Finally, the ALJ's error here in improperly denigrating Dr. Reitz's opinion cannot be excused as harmless. First, as the Sixth Circuit noted in *Wilson*, non-compliance with the treating physician rule/good reasons requirement deprives the claimant of a procedural right given to him by the Commissioner's own regulations.[79] Further, Dr. Reitz is a treating source, and thus his opinion, if afforded controlling weight here, would provide a basis for Dixon to be declared disabled.

Therefore, because the decision here does not conform to the treating physician rule/good reasons requirement as relates to Dr. Reitz, the matter must be remanded. In addition, because of that remand, it will not be necessary here to consider the other issues

---

[78] *Rothgeb v. Astrue*, 626 F. Supp. 2d 797, 808 (S.D. Ohio 2009) (citations omitted).

[79] *Wilson*, 378 F.3d at 547.

raised by Dixon, although my decision in this regard should not preclude the Commissioner from re-examining those questions on remand.

## Conclusion

For the reasons stated above, substantial evidence does not support the finding of the Commissioner that Dixon had no disability. Therefore, the denial of Dixon's applications is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: May 4, 2015                                            s/ William H. Baughman, Jr.
                                                              United States Magistrate Judge